1

2

3

4                         UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   MADIABEL GUEYE,                              Case No.  3:22-cv-08904-JSC

8                     Plaintiff,

9           v.                                   **ORDER RE: DEFEDANTS' MOTION
                                                 TO DISMISS**
10  WELLS FARGO BANK, et al.,                    Re: Dkt. No. 42

11                    Defendants.

12

13          Madiabel Gueye, proceeding without an attorney, sues Wells Fargo Bank, N.A. ("Wells

14  Fargo") and Chris Potts, a district manager of a Wells Fargo Bank location, alleging Defendants

15  racially discriminated against him in violation of 42 U.S.C. § 1981 and intentionally inflicted

16  emotional distress upon him.  Now pending before the Court is Defendants' motion to dismiss.

17  (Dkt. No. 42.)[1]  Having carefully considered the briefing, the Court concludes oral argument is not

18  required, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS Defendants' motion WITH LEAVE TO

19  AMEND.  Plaintiff has not yet alleged sufficient facts to plausibly state a claim for relief, although

20  he may be able to do so.

21                                   **BACKGROUND**

22  **I.      COMPLAINT ALLEGATIONS**

23          "Mr. Gueye is an African American male."  (Dkt. No. 40 ¶ 10.)  He "operates an

24  automotive repair and diagnostics business" that regularly includes "cash receipts."  (*Id.* ¶ 9.)  He

25  "has been a business customer of Defendant since 2007."  (*Id.* ¶ 8.)  "Currently, Plaintiff has four

26  (4) business accounts and two (2) personal accounts with the Defendant." (*Id.*)  "[A]bout every

27  ───────────────

28  [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
    ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

1    other week, he or one of his employees visited the Antioch Branch to deposit cash into" Plaintiff's

2    business accounts.  (*Id.* ¶ 9.)  Usually, Mr. Gueye or his employee deposited between "$10,000 to

3    $50,000 per visit."  (*Id.*)

4        Around August 28, 2022, "Mr. Gueye went to Wells Fargo Brank (branch located on A

5    Street) to open a new account" because his current account "was compromised."  (*Id.* ¶ 13.)

6    "When he arrived at the Branch he sat on one of the chairs and he was approached by an

7    employee," who asked what the purpose of Mr. Gueye's visit was.  (*Id.*)  "[T]he teller was staring

8    down at him clearly letting Mr. Gueye know that he was not welcome at the branch because the

9    employee recognize [sic] Mr. Gueye from previous incidents with deposit errors."  (*Id.*)  "After

10   opening the account, Mr. Gueye left."  (*Id.*)

11       The next day, Mr. Gueye went back to the branch on A street to request a letterhead from

12   the account manager.  (*Id.* ¶ 13.)  "The account manager told him they did not have Wells Fargo

13   Bank letterhead so Mr. Gueye left."  (*Id.*)

14       On August 15, 2023, Mr. Gueye went to the Wells Fargo branch in Brentwood, California.

15   (*Id.* ¶ 14.)  "When he arrived, he advised the account manager that he needed to open a new

16   business account for new business venture and presented her with the corporation paperwork that

17   he received from the Secretary of State."  (*Id.*)  "At that point, the account manager informed Mr.

18   Gueye that she could not open the account because the corporate file were 'fakes.'"  (*Id.*)

19       Mr. Gueye left the branch and contacted the branch manager of the Wells Fargo located in

20   Railroad, Pittsburg, California.  (*Id.*)  Mr. Gueye arrived at the bank, and waited for Monica, the

21   bank manager.  (*Id.*)  After waiting a few minutes, Monica approached Mr. Gueye and "began to

22   yell" and "point her finger to the door."  (*Id.*)  She told Mr. Gueye to "get out of the branch"

23   because she claimed Mr. Gueye was recording her.  (*Id.*)  Mr. Gueye informed Monica he was not

24   recording her.  (*Id.*)  She "stare[d] at Mr. Gueye in repulsive matter."  (*Id.*)  He informed her he

25   needed to make a deposit in his accounts, and she "told him she did not care with smirk and that

26   Mr. Gueye needed to leave."  (*Id.*)  "Mr. Gueye was embarrassed and confused and left the

27   branch."  (*Id.*)

28       Mr. Gueye brings two claims against Wells Fargo and Chris Potts: (1) violation of 42

United States District Court
Northern District of California

1    U.S.C. § 1981; and (2) intentional infliction of emotional distress.

2    **II.    PROCEDURAL HISTORY**

3           Wells Fargo and Mr. Potts moved to dismiss Plaintiff's complaint.  (Dkt. No. 42.)  Seven

4    days after Mr. Gueye's response was due, Mr. Gueye filed an opposition.  (Dkt. No. 43.)  The

5    Court will consider Mr. Gueye's opposition as timely for purposes of this Order.

6                                             **DISCUSSION**

7    **I.    LEGAL STANDARD**

8           A complaint should be dismissed under Rule 12(b)(6) if it lacks sufficient facts to "state a

9    claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

10   (quotations and citations omitted).  A claim is facially plausible when it "pleads factual content

11   that allows the court to draw the reasonable inference that the defendant is liable for the

12   misconduct alleged."  *Id.*  While "[a]ll allegations of material fact are taken as true and construed

13   in the light most favorable to the nonmoving party," the court "need not . . . accept as true

14   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

15   inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on*

16   *denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (cleaned up).

17   **II.    PLAINTIFF'S OPPOSITION AND ORIGINAL COMPLAINT**

18          Mr. Gueye's opposition does not dispute Defendants' legal memorandum, but instead

19   contains additional factual allegations about his interactions with Defendants.  In Mr. Gueye's

20   opposition, he alleges "[d]ue to several ongoing issues with the Wells Fargo branch location on A

21   Street in Antioch CA, Mr. Gueye . . . escalated the concerns to the Regional Manager," Mr. Potts.

22   (Dkt. No. 43 at 3.)  Mr. Gueye asserts he "called Chris Potts and informed him that he went to the

23   branch and teller counted a deposit three times and gave Mr. Gueye three different amounts."  (*Id.*)

24   Mr. Gueye "requested the teller to count the money by hand and the teller refused."  (*Id.* at 3-4.)

25   After telling Mr. Potts about this interaction, Mr. Potts told Mr. Gueye "the tellers are afraid of

26   you," and suggested an employee make the deposits instead or Mr. Gueye bank somewhere else.

27   (*Id.* at 4.)  Mr. Gueye alleges each time he visited the bank "he spoke calm and did not raise his

28   voice."  (*Id.*)

United States District Court
Northern District of California

1     Mr. Gueye's opposition also alleges additional facts about Wells Fargo's recent fines and

2 legal disputes.  (*Id.*)  He asserts, according to a Bloomberg report from March 2022, "Wells Fargo

3 was the only major lender to reject more Black mortgage refinancing applications than it approved

4 in the mortgage refinancing boom of 2020."  (*Id.* at 5.)

5     However, in assessing Defendants' motion to dismiss, the Court cannot consider the new

6 allegations raised in Plaintiff's opposition.  *See Schneider v. California Dep't of Corr.*, 151 F.3d

7 1194, 1197 (9th Cir. 1998) ("The 'new' allegations contained in the inmates' opposition motion,

8 however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6)

9 dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a

10 memorandum in opposition to a defendant's motion to dismiss.").

11     Plaintiff's amended complaint also omits allegations that were included in the original

12 complaint.  (Dkt. No. 1 at ¶¶ 13-19.)  As these allegations are not in the amended complaint (Dkt.

13 No. 40), the Court cannot consider them in deciding whether Plaintiff plausibly states a claim.

14     **Plaintiff is instructed to include all details and factual allegations that support his**

15 **racial discrimination and emotional distress claims in any amended complaint. That some of**

16 **those alleged incidents may have occurred more than two years before he filed his lawsuit**

17 **does not mean he cannot allege them in his Second Amended Complaint.**

18 **III.**     **42 U.S.C. § 1981**

19     Plaintiff's first cause of action alleges Defendants violated 42 U.S.C. § 1981.  Section

20 1981 provides:

21         All persons within the jurisdiction of the United States shall have the
22         same right in every State and Territory to make and enforce contracts,
         to sue, be parties, give evidence, and to the full and equal benefit of
23         all laws and proceedings for the security of persons and property as is
         enjoyed by white citizens, and shall be subject to like punishment,
24         pains, penalties, taxes, licenses, and exactions of every kind, and to
         no other.

25 42 U.S.C.A. § 1981(a).  The Supreme Court has "construed the section to forbid all 'racial'

26 discrimination in the making of private as well as public contracts."  *Saint Francis Coll. v. Al-*

27 *Khazraji*, 481 U.S. 604, 609 (1987).  "To prevail," in a § 1981 case, "a plaintiff must initially

28 plead and ultimately prove that, but for race, it would not have suffered the loss of a legally

1    protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019

2    (2020).  So, "if the defendant would have responded differently but for the plaintiff's race, it

3    follows that the plaintiff has not received the same right as a white person."  *Id.* at 1015.

4            The complaint alleges Mr. Gueye is "an African American male."  (Dkt. No. 40 ¶ 10.)

5    When a plaintiff files a complaint without representation by a lawyer, the Court must "construe the

6    pleadings liberally . . . to afford the petitioner the benefit of any doubt."  *Hebbe v. Pliler*, 627 F.3d

7    338, 342 (9th Cir. 2010) (cleaned up).  However, even liberally construing Mr. Gueye's

8    complaint, his complaint does not state sufficient facts to plausibly support the inference

9    Defendants' alleged actions were taken because of his race.  For example, during his August 2022

10   interaction with a Wells Fargo teller, Mr. Gueye alleges the teller was "staring down at him clearly

11   letting Mr. Gueye know that he was not welcome at the branch because the employee recognize

12   [sic] Mr. Gueye from previous incidents with deposit errors."  (Dkt. No. 40 ¶ 13.)  So, Mr. Gueye

13   pleads the reason the teller "star[ed]" at Mr. Gueye was because of his previous interactions with

14   the teller involving deposit errors; he does not allege and facts that plausibly support an inference

15   it was because of his race.  Mr. Gueye must plead facts that explain why he believes the

16   interactions involving deposit errors support an inference of racial discrimination.

17           Similarly, Mr. Gueye's complaint indicates his later disputes with Wells Fargo employees

18   were caused by issues with his paperwork being "fake"; but he does not allege the paperwork was

19   not fake or additional facts that would support an inference Defendants sent him away because of

20   his race.

21           Further, while the amended complaint alleges Mr. Gueye and his employees "have been

22   subjected to racial profiling, racial slurs, derogatory comments, suspicion, unequal treatment and

23   humiliation" by Wells Fargo's employees, (Dkt. No. 40 ¶ 10), Mr. Gueye does not allege specific

24   facts supporting this conclusory statement.  The amended complaint's specific references to racial

25   profiling and discrimination allege legal conclusions that are unsupported by factual allegations,

26   so the Court cannot credit those conclusions with the presumption of truth.  For example, the

27   amended complaint does not identify any times Wells Fargo employees used racial slurs toward

28   Mr. Gueye or his employees.  Therefore, the amended complaint does not give rise to a plausible

United States District Court
Northern District of California

1    claim for relief under 42 U.S.C. § 1981, and Defendants' motion is GRANTED as to Plaintiff's

2    first cause of action.

3    **IV.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

4            Plaintiff's second cause of action alleges Defendants intentionally inflicted emotional

5    distress on Plaintiff.  (Dkt. No. 40 ¶¶ 20-22.)  Plaintiff asserts Defendants' actions were

6    "outrageous and intolerable in civilized society," and were "intended to cause . . . emotional

7    distress."  (*Id.* ¶ 20.)  As a result of Defendants' actions, Plaintiff asserts he "suffer[s] a bad mental

8    state, severe depression, and anxiety" as well as post traumatic stress disorder and suicidal

9    thoughts."  (*Id.* ¶ 22.)

10           In California,

11               A cause of action for intentional infliction of emotional distress exists
                 when there is (1) extreme and outrageous conduct by the defendant
12               with the intention of causing, or reckless disregard of the probability
                 of causing, emotional distress; (2) the plaintiff's suffering severe or
13               extreme emotional distress; and (3) actual and proximate causation of
                 the emotional distress by the defendant's outrageous conduct.
14

15   *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (cleaned up).  "A defendant's conduct is

16   'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized

17   community.'"  *Id.* at 1050–51 (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965,

18   1001 (1993)).  Further, "[l]iability for intentional infliction of emotional distress does not extend

19   to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Id.* at

20   1051 (quotations and citations omitted).

21           The complaint fails to allege "extreme and outrageous" conduct.  "[M]ere insulting

22   language, without more, ordinarily would not constitute extreme outrage unless it is combined

23   with aggravated circumstances."  *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138, 147

24   (2021)(cleaned up).  In some circumstances, the use of racial slurs and insults may constitute

25   outrageous conduct.  *See Robinson v. Hewlett-Packard Corp.*, 183 Cal. App. 3d 1108, 1129–30

26   (Ct. App. 1986) ("[A]n employer's use of racial slurs, against an employee who is susceptible to

27   such slurs, may constitute 'outrageous' conduct.");  *Smith*, 64 Cal. App. 5th at 148 ("[A]n

28   [Intentional Infliction of Emotional Distress] claim can stem from the use of racial epithets if

United States District Court
Northern District of California

6

1   coupled with aggravating circumstances.")  However, Plaintiff has failed to allege any racial slurs

2   or racially motivated insults.  And, as explained above, as currently pled the amended complaint

3   does not support a plausible inference of racial discrimination.  Nor has Plaintiff alleged any

4   aggravating factors, such as "a defendant (1) abus[ing] a relation or position which gives him

5   power to damage the plaintiff's interest; (2) know[ing] the plaintiff is susceptible to injuries

6   through mental distress; or (3) act[ing] intentionally or unreasonably with the recognition that the

7   acts are likely to result in illness through mental distress."  *Smith*, 64 Cal. App. 5th at 147 (quoting

8   *Agarwal v. Johnson* 25 Cal.3d 932, 946 (1979), *disapproved of on other grounds by White v.*

9   *Ultramar, Inc.*, 21 Cal. 4th 563, 574 n.4 (1999)).

10          So, Defendants' motion is GRANTED as to Plaintiff's intentional infliction of emotional

11   distress claim.

12   **V.      LEAVE TO AMEND**

13          Because Plaintiff could plead facts necessary to state a claim in an amended complaint,

14   Plaintiff may file a Second Amended Complaint.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039

15   (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend

16   unless it is absolutely clear that the deficiencies of the complaint could not be cured by

17   amendment.") (cleaned up).  Any amended complaint must be filed on or before **April 12, 2024**.

18   If Plaintiff does not file an amended complaint by that date, the action will be dismissed with

19   prejudice.

20          As discussed above, Plaintiff is instructed to include all relevant factual allegations in his

21   Second Amended Complaint—in deciding whether he states a claim the Court will be unable to

22   consider allegations in earlier versions of his complaint not included in the Second Amended

23   Complaint.  As Plaintiff is proceeding without representation by a lawyer, the Court directs his

24   attention to the Handbook for Pro Se Litigants, which is available along with further information

25   on the Court's website located at https://www.cand.uscourts.gov/pro-se-litigants/.  Plaintiff may

26   also contact the Legal Help Center for free assistance; he can make an appointment by calling 415-

27   782-8982 or emailing fedpro@sfbar.org.

28

**CONCLUSION**

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss with leave to amend. Any amended complaint must be filed on or before **April 12, 2024**.

This Order resolves Docket No. 42.

**IT IS SO ORDERED.**

Dated: March 7, 2024

JACQUELINE SCOTT CORLEY
United States District Judge